ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of - | ) |
| | ) |
| Scot Cardillo dba Engineers Tooling | ) ASBCA No. 61612 |
| Support | ) |
| | ) |
| Under Contract No. N00174-11-D-0004 | ) |

APPEARANCES FOR THE APPELLANT:
Mark Martins, Esq.
 The Mark Martins Law Office, PLLC
 Washington, DC

Christopher C. Bouquet, Esq.
 The Law Office of Christopher C. Bouquet,
  PLLC
 Alexandria, VA

APPEARANCES FOR THE GOVERNMENT:
Allison M. McDade, Esq.
 Navy Chief Trial Attorney
Sharon G. Hutchins, Esq.
David M. Ruddy, Esq.
 Trial Attorneys

<u>OPINION BY ADMINISTRATIVE JUDGE MCILMAIL ON GOVERNMENT'S
MOTION TO DISMISS FOR LACK OF JURISDICTION</u>

Appellant, Scot Cardillo, doing business as Engineers Tooling Support (ETS), contracted with the government to provide components ("anvils" and "cups") for use in percussion primers for ejectors in naval aircraft, using government-furnished equipment.[1] ETS presented a claim that the contracting officer denied,[2] and the government subsequently terminated the contract for convenience.[3] The contracting officer denied a second claim,[4] leading to this appeal. The government requests dismissal of Counts I-VII and XVII of ETS's complaint.[5]

---

[1] *See* app. br. at 2. Specifically, five such primers: PVU-1, PVU-2, PVU-7, PVU-10, and PVU-12. R4, tab 1 at GOV 96–167; compl. ¶ 13.

[2] App. supp. R4, tab 4.5.2 at ETS 603, 623.

[3] R4, tab 4 at GOV 431.

[4] R4, tab 2 at GOV 349, tab 3 at GOV 422.

[5] Gov't br. at 1, 65.

STATEMENT OF FACTS FOR PURPOSES OF THE MOTION

The parties entered the contract in 2010.[6] In 2013, during contract performance, ETS presented to the contracting officer a claim for $21,175 "for additional effort caused by a defective die set for the PVU-1 anvils and certain [Technical Point of Contact (TPOC)] interference during the period February 28, 2011 through July 8, 2011."[7] The 2013 claim itemizes seven discrete interactions with the government's TPOC Peter Margiotta during that period, characterized by assertions of directives, coercion, interruptions, and interference from Mr. Margiotta that disrupted production and caused extra work for ETS (in the person of Mr. Cardillo), concerning the "PVU-1A effort."[8] Specifically, the 2013 claim recites that those seven incidents occurred during or on (1) February 28 through March 18 ($6,800 for approximately 80 hours to respond to "Mr. Margiottas [sic] directive"); (2) March 21 through April 16 ($875 for an estimated six to eight hours to provide Mr. Margiotta "information relating to PVU-1 Anvil redesign"); (3) May 24 through 26 ($3,000 for 24 hours for having been coerced to "tear[] down the cup setup entirely in order to make [Mr. Cardillo] available to 'run off' parts for Mr. Margiottas' [sic] review"); (4) May 27, 28, and 31 ($2,500 for an estimated 20 hours waiting for additional tooling, at Mr. Margiotta's insistence); (5) June 1 and 2 ($2,000 for 16 hours waiting while Mr. Margiotta reviewed finished parts); (6) June 6 and 10 ($2,500 for an estimated 20 hours for modifications and samples requested by Mr. Margiotta); and (7) June 16 through July 8 ($3,500 for an estimated 35 hours for assisting Mr. Margiotta, pursuant to his direction, in the development of drawings to be used in the future duplication of tooling).[9] The total is $21,175. The 2013 claim recites an eighth item: $2,100 for an estimated 20 hours for setup time, production interference, and tooling breakage, for which, in the 2013 claim, ETS accepts "full responsibility," and "makes no monetary claim."[10]

In the 2013 claim, ETS also raises the concern that the government-furnished die sets "may be in such excessively worn condition that working dies would have to be remade," and recounts that Mr. Cardillo had expressed to Mr. Margiotta the belief that the government was "responsible to cover the cost of the tooling considering [Mr. Cardillo's] interpretation that [Mr. Cardillo was] to receive [government-

---

[6] R4, tab 1 at GOV 96.
[7] App. supp. R4, tab 4.5.2 at ETS 603-18; compl. ¶ 6. We agree with the parties that the 2013 document is a claim. App. br. at 4 ¶ 6; gov't br. at 1.
[8] App. supp. R4, tab 4.5.2 at ETS 605-07.
[9] App. supp. R4, tab 4.5.2 at ETS 605-07 (alterations added); *see also id.* at ETS 608-18.
[10] App. supp. R4, tab 4.5.2 at ETS 607.

2

furnished] dies in good working order . . . . ."[11]  Finally, ETS says, referencing a die set that is among the contract's government-furnished equipment:

> As it relates to the PVU-1A Anvils, I am hopeful that this issue once and for all can be put to rest.  It is my belief that the PVU-1A Anvil die set is of very poor design and it may be appropriate to re-design.[12]

The contracting officer denied the 2013 claim in 2014.[13]  ETS did not appeal from that decision.[14]  The government terminated the contract for convenience on November 3, 2015,[15] and modified the contract to that effect on January 20, 2016.[16]  On December 12, 2016, ETS sent to the contracting officer a termination settlement proposal.[17]  On February 6, 2017, the contracting officer issued a unilateral, "no-cost" termination determination.[18]

On April 20, 2017, ETS presented to the contracting officer a certified claim demanding $789,903.39 based upon three theories of recovery:  (1) misrepresentation and nondisclosure of superior knowledge, (2) defective specifications, and (3) government interference or failure to cooperate.[19]  Specifically, ETS complained about government-furnished equipment, namely that "the drawing packages for the anvils were [] in flux," "[t]he drawings for some 'wear items' (e.g., punches, primarily) contained defective specifications," causing cracked or out-of-tolerance parts, and that government corrective measures that were added to the production process were defectively designed or malfunctioned, requiring ETS to go beyond its contractual responsibilities and "troubleshoot the many fundamental design and process problems plaguing the program."[20]  ETS asserted that Mr. Margiotta "interfere[d] with the efficient management of the production process and even the configuration of the peripheral equipment added to the major piece of equipment —the die press."[21]  ETS also asserted that it learned from Mr. Margiotta that "the drawings for the anvil wear items had been held back from the original set of drawings being furnished because there were minor changes being made to the outer dimensions of the

---

[11] App. supp. R4, tab 4.5.2 at ETS 615 (bracketed material added).
[12] App. supp. R4, tab 4.5.2 at ETS 617.
[13] App. supp. R4, tab 4.5.2 at ETS 623.
[14] App. br. ¶ 10.
[15] Compl. ¶ 239; app. br. ¶ 11; gov't br. at 3.
[16] R4, tab 1 at GOV 262.
[17] App. br. ¶ 11.
[18] R4, tab 1 at GOV 340-41.
[19] R4, tab 2 at GOV 349, 353, 421.
[20] R4, tab 2 at GOV 357.
[21] R4, tab 2 at GOV 358.

3

anvil part drawings," and were not provided until "around August 2011."[22]  ETS also pointed to a "failure to resolve the diameter problem."[23]  ETS asserted that "[t]he need to generate a usable set of drawings caused some of the cost overruns on the first anvil production lots (for PVU-1 and PVU-2 anvils), which were the subject of a claim in April 2014."[24]  ETS also asserted a bad-faith government "vendetta" against ETS,[25] extra-work such as the redesign of "parts and wear items such as punches or die buttons,"[26] and administrative delays not related to Mr. Margiotta's alleged interference and direction during the period February through July 2011.[27]

The 2017 claim also at least appears to recite the same, specific incidents from 2011 recited in the 2013 claim;[28] thus, there is at least some overlap between the 2013 and the 2017 claims.  In addition, in the 2017 claim, ETS admits to restating the $3,500, 2013 claim that Mr. Margiotta made ETS provide information that the government could use to develop new tooling drawings.[29]  Other claims set forth in the 2017 claim are not set forth in the 2013 claim; for example, the 2017 claim sets forth claims (not set forth in the 2013 claim) of lack of inadequate facilities for "post processing" and inspection of "contractual end items," and expenditures incurred by ETS "to provide inspection, storage and maintenance facilities at ETS' location," and "to handle, secure, and store scrap materials.[30]  And ETS even includes in the 2017 claim the $2,100 tooling breakage claim for which, in the 2013 claim, ETS took "full responsibility" and expressly made "no monetary claim."[31]

The contracting officer denied the 2017 claim on January 31, 2018.[32]  ETS timely appealed on April 26, 2018.[33]  The notice of appeal states that ETS "appeals the decision of the contracting officer dated January 31, 2018"; that is, the contracting officer's 2018 denial of ETS's 2017 claim.  The notice of appeal identifies no other decision or action as the subject of the appeal.

---

[22] R4, tab 2 at GOV 362.
[23] R4, tab 2 at GOV 362.
[24] R4, tab 2 at GOV 362.
[25] R4, tab 2 at GOV 358.
[26] R4, tab 2 at GOV 363.
[27] R4, tab 2 at GOV 379-80.
[28] R4, tab 2 at GOV 374-79.
[29] *Compare* R4, tab 2 at GOV 362, *with* R4, tab 4 at ETS 606.
[30] R4, tab 2 at GOV 368.
[31] App. supp. R4, tab 4.5.2 at ETS 607; R4, tab 2 at GOV 375.
[32] R4, tab 3 at GOV 422.
[33] *See* gov't br. ¶¶ 10-11.

DECISION

The notice of appeal establishes the bounds of jurisdiction for the Board, and a matter that is not the subject of a notice of appeal is not properly before the Board. *See Blount Constr. Grp. of Blount, Inc.*, ASBCA No. 38998, 90-2 BCA ¶ 22,688 at 113,951. The only matter properly before the Board is the contracting officer's 2018 final decision denying ETS's 2017 claim; that decision is the only subject of the notice of this appeal. Consequently, Count XVII of the complaint in this appeal, which challenges the contracting officer's termination of the contract,[34] is dismissed for lack of jurisdiction. For the same reason, ETS's apparent challenge to the contracting officer's 2017 unilateral, no-cost termination determination is also dismissed for lack of jurisdiction.[35] *See Dev. & Evolution Constr. Co.*, ASBCA No. 58342, 13 BCA ¶ 35,453 at 173,860. However, to the extent that the government relies upon the bar to appeal set forth in Federal Acquisition Regulation (FAR) 52.249-2(j) as a *jurisdictional* basis to deny certain costs,[36] that regulation does not concern our jurisdiction. *See Am. Boys Constr. Co.*, ASBCA No. 61163, 18-1 BCA ¶ 36,949 at 180,051; *Black Bear Constr. Co.*, ASBCA No. 61181, 17-1 BCA ¶ 36,914 at 179,848-49; *see also Do-Well Mach. Shop, Inc.*, 870 F.2d 637, 641-42 (Fed. Cir. 1989).

Finally, we dismiss for lack of jurisdiction the claims that overlap the 2013 claim and the 2017 claim (that is, the claims set forth in the 2017 claim that are not "new" to that claim because they are based upon the same set of operative facts as claims set forth in the 2013 claim); otherwise, we would be reviewing the contracting officer's 2014 final decision, from which ETS has not appealed, and which decision is therefore, pursuant to 41 U.S.C. § 7103(g), "final and conclusive and [] not subject to review." *See Penna Grp., LLC*, ASBCA No. 61640 *et al.*, 21-1 BCA ¶ 37,917 at 184,152-53; *Mil. Aircraft Parts*, ASBCA No. 60336, 16-1 BCA ¶ 36,361 at 177,251; *Env't Safety Consultants, Inc.*, ASBCA No. 54995, 06-1 BCA ¶ 33,230 at 164,666; *SMS Agoura Sys., Inc.*, ASBCA No. 50878 *et al.*, 97-2 BCA ¶ 29,321 at 145,792-93. As ETS effectively concedes, that overlap consists of claims for compensation arising from (1) problems and issues with die sets and tooling for PVU-1 anvils, (2) directives from, and interference with contract performance by, Mr. Margiotta, during the period February 28 through July 8, 2011;[37] and (3) "cost overruns on the first anvil production lots (for PVU-1 *and* PVU-2 anvils)" caused by

---

[34] Compl. at 66, Count XVII.
[35] App. br. at 34-37.
[36] *See* gov't br. at 55.
[37] *See* app. br. at 4 ¶ 6 (bracketed material added).

"[t]he need to generate a usable set of drawings."[38]  Those "overlapping" claims are dismissed for lack of jurisdiction.

CONCLUSION

The motion to dismiss for lack of jurisdiction is granted consistent with the foregoing opinion; otherwise, the motion is denied.

Dated:  July 15, 2025

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

OWEN C. WILSON
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

MICHAEL N. O'CONNELL
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

---

[38] R4, tab 2 at GOV 362 (emphasis added).  Our dismissal of the second of those categories does not include the $2,100 for an estimated 20 hours for setup time, production interference, and tooling breakage, for which, in the 2013 claim, ETS accepted "full responsibility," and expressly made "no monetary claim."

6

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61612, Appeal of Scot Cardillo dba Engineers Tooling Support, rendered in conformance with the Board's Charter.

Dated: July 15, 2025

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals